IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

UNITED STATES OF AMERICA,

v.  CASE NO. 5:07-cr-36-RS-GRJ

VERNON WINSTON HENRY,

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Doc. 223, a motion to vacate pursuant to 28 U.S.C. § 2255, filed by Defendant Vernon Winston Henry. The United States has filed a memorandum in opposition, doc. 229. The Petitioner did not file a reply and accordingly the motion is ripe for review.

The motion stems from Defendant's guilty plea convictions for conspiring to distribute and possess with intent to distribute more than 1000 kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(vii), and 846, and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i). Petitioner received consecutive sentences of 90 months' imprisonment on Count I and 40 months imprisonment on Count V respectively.[1] Doc. 177. Petitioner did not appeal. The instant motion followed. Upon due consideration, and for the following reasons, the undersigned recommends that the motion to vacate be **DENIED**.

---

[1] Defendant recently received a reduction in his sentence on the conspiracy charge to 60 months and on the possession of a firearm in furtherance of a drug trafficking charge to 30 months, those sentences to run consecutively.

## **Background**

Defendant and four co-defendants were named in a seven-count indictment relating to a drug distribution conspiracy. Doc. 20 (superseding indictment). Defendant Vernon Henry was charged in Count I with conspiracy to distribute and possess with intent to distribute controlled substances (more than 500 grams of cocaine, Ecstasy and more than 1000 kilograms of marijuana), in Count IV with possession with intent to distribute a controlled substance (marijuana) and in Count V with possession of a firearm in furtherance of a drug trafficking crime. *Id.*

The events in this case revolved around the transport of drugs from Mexico into Texas and on to Northern Florida. The individual in charge of the distribution ring was Henry's co-defendant Justin Jerome Swaine. Defendant Vernon Henry testified at Swaine's trial. Doc. 209 at 88-168. Beginning in 2004, Henry sold 15 to 20 pounds of marijuana to Swaine at a time for a total of between 120 pounds and 150 pounds. *Id.* at 92. In August 2005, Swaine approached Henry, told Henry he had a connection in Houston and requested Henry's assistance in distributing marijuana from Swaine's Houston connection. *Id.* at 93. Thereafter Swaine provided approximately 100 pounds of marijuana to Henry every two weeks for a total of 1500-1700 pounds, which Henry in turn then distributed to other individuals. *Id.* at 96-97.

On April 17, 2007, Defendant's one bedroom apartment on Stadium Drive in Tallahassee was burglarized. *Id.* at 103. Police received a call from another resident of the apartment complex reporting a burglary in progress and responded to the call. *Id.* at 171. Defendant Henry was informed of the burglary when the police called him on the telephone. *Id.* at 103. When they responded to the report, police searched the

premises and discovered a pound of marijuana, blue tubs with marijuana residue on them, digital scales, packaging and 8 trash bags with marijuana residue on them. *Id.* Police also discovered an empty pistol holster on the living room couch. *Id.* at 173. When questioned by police as to the whereabouts of the gun that would presumably go in the holster, Defendant Henry told police his handgun had been stolen. *Id.* at 104. Defendant Henry testified at Swaine's trial that he "usually just always kept a gun for my personal protection." *Id.* When asked at Swaine's trial if the stolen handgun "had anything to do with being in the marijuana business," Defendant Henry responded "Somewhat, but not all of it." *Id.* He also testified at Swaine's trial that he used the blue tubs the police found at his apartment to store marijuana. *Id.* at 109-10.

Approximately three days after the April 17, 2007 burglary, Defendant Henry acquired another gun, which his girlfriend purchased for him in Georgia. *Id.* at 164. Defendant Henry was unable to renew his lease at the Stadium Drive apartment as a result of the burglary, so he moved out of the Stadium Drive apartment into a house rented by Defendant Swaine on Nantucket Lane in Tallahassee (the "Nantucket Lane house"). *Id.* at 111-12. He testified he was the only individual living in the house at that point. *Id.* at 112.

On June 20, 2007, agents from the Tallahassee Police Department and Florida Department of Law Enforcement, who were performing surveillance on the Nantucket Lane house, noticed a vehicle backed into the garage with its trunk open. *Id.* at 183-84. Defendant Henry testified at Swaine's trial he had set up a deal to sell ten pounds of marijuana to someone on that day. *Id.* at 116. Police then witnessed Defendant Henry placing a bag in the trunk of his girlfriend's vehicle. *Id.* Defendant Henry's

girlfriend, Dwan Milindez, then left the Nantucket Lane house in the vehicle and was stopped by police.  *Id.* at 183-84.  Police searched the vehicle and found 9.6 pounds of marijuana in the trunk.  *Id.*  Defendant Henry's girlfriend was arrested and law enforcement agents then applied for a search warrant of the Nantucket Lane house.  *Id.* at 184

After the warrant was obtained, the agents searched the Nantucket Lane house and found half a pound of marijuana, digital scales and a blue tub with marijuana residue in it.  *Id.* at 184-86. Only one bedroom in the house appeared to be occupied, the master bedroom.  *Id.* at 186, 191.  In that room, agents discovered a plastic bag containing $4,800 separated into five bundles on the corner of the bed and a Kel-Tec 9 mm semi-automatic pistol with seven rounds in the clip and an eighth round in the chamber on the floor near the bed.  *Id.* at 186.

When questioned at Swaine's trial regarding what occurred upon the execution of the search warrant on June 20, 2007, Plaintiff stated the following:

> A. Well, actually, I was actually paid - - I was actually paid.  But when the police came to the house they took everything, so.
>
> Q. They got the money?
>
> A. They got the money and the gun.
>
> Q. And was that the bag full of money that was lying on the bed?
>
> A. Basically, yeah.
>
> Q. In the bedroom?
>
> A. Yeah.
>
> Q.  And you say the "gun."  That was the gun that was lying on the floor near the

money?

A. Yes.

*Id.* at 119.

Plaintiff was subsequently arrested by law enforcement and taken to the Leon County Sheriff's office, where he was interviewed. *Id.* at 196.

On September 6, 2007, Defendant pleaded guilty to the conspiracy count and the possession of a firearm in furtherance of a drug trafficking offense count, pursuant to a plea agreement. Doc. 177. In exchange for Petitioner's entry of a guilty plea to those counts, the Government dismissed the possession with intent to distribute a controlled substance count. Doc. 119.

The plea agreement contained a provision specifying "Defendant is pleading guilty because **VERNON HENRY** is in fact guilty of the charges contained in Counts One and Five. In pleading guilty to these offenses, defendant acknowledges that were this case to go to trial, the government could present evidence to support these charges beyond a reasonable doubt." Doc. 177 at 2. Defendant was also specifically advised of the elements of the possession of a firearm in furtherance of a drug trafficking offense at the change of plea hearing, both in writing and orally by the Court. Docs. 115 and 118.

The factual basis for the plea offered by the Government at Plaintiff's change of plea hearing specifically provided the following:

> In April 2007, officers responding to a burglary at Henry's apartment found bags of marijuana, a pistol holster, and packaging materials. The number of containers suggested the distribution of marijuana. In May, 2007, Henry admitted that he had been storing quantities of marijuana for Swaine since 2004 and gave estimates totaling about 3,000 pounds for this marijuana. Henry identified photographs of

> [co-defendants] Swaine, Bondurant and Jorge.
>     In June, 2007, Henry admitted distributing ten pounds of marijuana. His then residence was searched.  More containers with marijuana residue were found.  A loaded 9 millimeter pistol was found with a round chambered, within three to four feet of bundles of currency totaling $4,800.  Henry admitted that the marijuana came from Swaine through [co-defendant Carlfred] Anderson and gave further details about Swaine's organization."

Doc. 116 at 3.  Defendant signed the Statement of Facts underneath a heading reading "Defendant's Acknowledgment" and providing "I have read the above Statement of Facts and agree that the government can present evidence as set out above.  I understand that I may present the Court with my own version of the facts and may dispute particular allegations against me." *Id.* at 4.

The Court accepted Defendant Henry's guilty plea and sentenced Defendant Henry to consecutive sentences of 90 months' imprisonment on the conspiracy charge and 40 months' imprisonment on the possession of a firearm in furtherance of a drug trafficking crime charge, with five years of supervised release on each count to run concurrent to one another.  Docs. 174 and 177.

## Motion to Vacate

In the instant motion, Defendant Henry contends that his conviction and sentence violated his constitutional rights because his trial counsel provided ineffective assistance by allowing him to plead guilty to the crime of possession of a firearm in furtherance of a drug trafficking crime without a sufficient factual basis to support a guilty plea to that charge.  Doc. 223.  Defendant Henry states his counsel was ineffective for failing to inform Defendant Henry the Government's factual basis did not support the elements of the possession of a firearm in furtherance of a drug trafficking crime charge.

*Case No: 5:07-cr-36-RS-GRJ*

## **Standard of Review**

A prisoner is entitled to relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded the court's jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999). Collateral review is not a substitute for direct appeal, and therefore the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited. "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted). Further, disposition of a claim of error on direct appeal precludes further review in a subsequent collateral proceeding. *See, e.g., Mills v. United States*, 36 F.3d 1052, 1056 (11th Cir. 1994).

Because Defendant Henry's claim raises the issue of counsel's effectiveness, a brief review of *Strickland v. Washington*, 466 U.S. 668 (1984), is appropriate. To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy. *Strickland*, 466 U.S. at 686. The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong. *Id*. at 697. The court need not address the adequacy of counsel's performance when a defendant fails to make a sufficient showing of prejudice. *Id.; see also Tafero v. Wainright*, 796 F.2d 1314, 1319

(11th Cir. 1986). To show prejudice, a defendant must show more than simply that counsel's unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Instead, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

*Strickland* applies to claims of a guilty plea based on the ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 57-58 (1985). With respect to a guilty plea, "counsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial." *Wofford v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984)(*per curiam*). In order to properly advise the defendant, "counsel must, after making an independent examination of the facts, circumstances, pleadings and laws involved, offer his informed opinion as to the best course to be followed in protecting the interests of his client." *Id.*

## Discussion

18 U.S.C. § 924(c) makes it a criminal offense to use or carry a firearm "during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crimes that provides for an enhanced penalty if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States" or to possess a firearm "in furtherance of such crime." 18 U.S.C. § 924(c)(1)(A). To prove possession of a firearm in furtherance of a drug trafficking crime, the Government must prove "the firearm helped, furthered,

*Case No: 5:07-cr-36-RS-GRJ*

promoted, or advanced the drug trafficking." *United States v. Timmons*, 283 F.3d 1246, 1252 (11th Cir. 2002). A conviction for this offense is properly supported by "a showing of some nexus between the firearm and the drug selling operation." *Id.* at 1253. To determine whether the firearm was possessed in furtherance of a drug trafficking crime, the Court looks to various factors including the type of drug activity, the accessability of the firearm, the type of firearm and whether it was loaded, the proximity of the gun to drugs or drug proceeds, and the time and circumstances under which the gun was found. *Id.*

Defendant characterizes the evidence as establishing nothing more than the mere presence of a firearm in a residence. Defendant's characterization of the case is narrow and ignores the undisputed facts, which were more than sufficient to establish beyond a reasonable doubt the elements for the charge of possession of a firearm in furtherance of a drug trafficking crime.

In this case, law enforcement discovered the firearm, a Kel-Tec 9 mm semi-automatic pistol, in the only occupied bedroom of a house in which Plaintiff was the only resident, a bedroom apparently utilized by Plaintiff. Located elsewhere in the house were half a pound of marijuana, digital scales and a blue tub with marijuana residue in it, which were all clearly used in trafficking drugs. The gun was located on the floor next to the bed in plain view within several feet of $4,800 in cash, apparently the proceeds from drug transactions. Notably, the 9 mm semi-automatic pistol was loaded, with one round chambered and seven rounds in the clip. The gun was discovered during the execution of a search warrant by law enforcement officers at Plaintiff's residence after law enforcement officers had personally witnessed Defendant Henry loading

approximately ten pounds of marijuana into the back of his girlfriend's vehicle for use in what Defendant Henry admitted was a pre-arranged drug transaction for 10 pounds of marijuana.

These facts – which are not seriously disputed by Petitioner and which were expressly admitted in the factual basis in support of the guilty plea – were more than sufficient to establish the essential elements of the crime of possession of a firearm in furtherance of a drug trafficking crime and thus more than sufficient to support a conviction on the possession of a firearm in furtherance of a drug trafficking crime. *See United States v. Mackey*, 265 F.3d 457, 462 (6th Cir. 2001)(conviction for possession of a firearm in furtherance of a drug trafficking offense affirmed where an illegally possessed, loaded, short-barreled shotgun in the living room was located near the scales and razor blades in a house from which the defendant sold drugs); *United States v. Ceballos-Torres*, 218 F.3d 409, 411 (5th Cir. 2000)(conviction for possession of a firearm in furtherance of a drug trafficking offense affirmed where a loaded 9mm gun was found in the open on defendant's bed, which defendant claimed was for personal protection, along with 569.8 grams of cocaine and $1,360 found nearby in a bedroom closet).

Accordingly, because there was a sufficient factual basis to support Defendant's guilty plea to the gun charge, it follows that Defendant's counsel did not render deficient performance. Moreover, not only did Defendant's counsel provide Defendant with legally accurate advice but advice which resulted in the Defendant receiving a sentence considerably less than he would have received had the Defendant not plead guilty and instead proceeded to trial.

For these reasons, Petitioner's motion to vacate has no merit and, accordingly,

should be denied.

## Conclusion

In light of the foregoing, it is respectfully **RECOMMENDED t**hat the motion to vacate, Doc. 223, be **DENIED** and that a certificate of appealability be **DENIED.**

**IN CHAMBERS** this 15th day of February 2012.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

**NOTICE TO THE PARTIES**

A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.